UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GURDIAL PARDESI,<br><br>            Plaintiff,<br><br>    v.<br><br>R.C.F.H.P. INC., as corporate owner of 1374 York Avenue, New York, NY 10021; CAMBRIDGE REALTY MANAGEMENT LLC, as managing agent of 1374 York Avenue, New York, NY 10021; ROBERT GALPERN, individually and as Head Officer and Managing Agent of 1374 York Avenue, New York, NY 10021;<br>LOUIS GALPERN, an individual;<br>ELLIOT GALPERN, an individual;<br><br>           Defendants. | Case No. 25-6612<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Gurdial Pardesi ("Mr. Pardesi"), by and through his undersigned counsel, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, alleges as follows against Defendants R.C.F.H.P. Inc., Cambridge Realty Management LLC, Robert Galpern, Louis Galpern and Elliot Galpern (together, "Defendants"):

**INTRODUCTION**

1. This is a case about a retired and disabled New York City Corrections Officer who has become a prisoner in his own home because of Defendants' discriminatory conduct. Mr. Pardesi is the tenant of a fifth floor walk-up apartment in Manhattan where he has lived for 43 years. The unit is rent stabilized. Because he is disabled, he cannot walk up the four flights of stairs to his apartment without great pain, discomfort, and exhaustion. The four flights of stairs also present a substantial fall risk for Mr. Pardesi given his mobility challenges. Mr. Pardesi requires, and has requested, a transfer to a first-floor unit or an elevator building in his neighborhood, but Defendants have repeatedly obstructed, delayed, and rejected Mr. Pardesi's

1

requests for a reasonable accommodation. A transfer to a ground floor unit or elevator building nearby is the only reasonable accommodation for Mr. Pardesi's disability. Defendants' rejections constitute clear instances of disability discrimination under federal, state, and local laws.

2. For more than a decade, Mr. Pardesi has requested an apartment transfer as a reasonable housing-related accommodation. Mr. Pardesi has numerous health difficulties that constitute disabilities, including scoliosis, a congenital ankle deformity, asthma, diabetes, and degradation of his joints and bones. Mr. Pardesi also has had two knee replacements and recently underwent another knee surgery in May 2025. He originally postponed the surgery hoping Defendants would provide an apartment transfer because after the surgery, he was not able to climb any stairs while recovering from surgery. And even after his recovery, he is no longer capable of regularly descending and ascending several flights of stairs. But unsurprisingly, Defendants failed to provide a reasonable accommodation prior to the surgery. Unable to wait any longer, Mr. Pardesi had the surgery and had to recover for months in a nursing home as opposed to his own home. Today, he is still in the nursing home.

3. While Mr. Pardesi's recent surgery will reduce his pain and allow him limited mobility, he still cannot regularly descending and ascending multiple flights of stairs. Mr. Pardesi's mobility is permanently impaired by his various disabilities, and he is entitled to an apartment transfer as the only viable reasonable accommodation for his disabilities. But by failing to accommodate Mr. Pardesi with an apartment transfer that maintains his rent-stabilized status, Defendants have violated, and continue to violate, Mr. Pardesi's right to equal use and enjoyment of his home, as required by the Fair Housing Amendments Act and the New York State and City Human Rights Laws.

4.	Accordingly, through this action, Mr. Pardesi seeks, among other things, injunctive relief requiring Defendants to immediately provide a reasonable accommodation to Mr. Pardesi.

## PARTIES

5.	Plaintiff Gurdial Pardesi is a 73-year-old retired corrections officer. He is disabled and suffers from various knee and ankle disorders, scoliosis, asthma, a congenital and progressive foot deformity, and nerve damage from diabetes. Mr. Pardesi has lived at 1374 York Avenue, Apt. 5C, New York, NY 10021 for over 43 years.

6.	Defendant R.C.F.H.P. INC. is a New York Corporation and is the owner of the property located at 1374 York Avenue, New York, NY 10021. R.C.F.H.P. INC. maintains its principal place of business at 82 Nassau Street, #216, New York, New York 10038.

7.	Cambridge Realty Management, LLC is the managing agent and operator of 1374 York Avenue, New York, NY 10021, where Mr. Pardesi resides. Cambridge Realty Management, LLC maintains its principal place of business at 82 Nassau Street, #216, New York, New York 10038.

8.	Defendant Robert Galpern is currently the head officer of 1374 York Avenue, located at 82 Nassau Street, #216, New York, New York 10038.

9.	Defendant Louis Galpern holds himself out as a representative and agent of Defendants Cambridge Realty Management, LLC and R.C.F.H.P. INC. In his conversations with Mr. Pardesi, Louis Galpern has expressed that he has decision-making authority with respect to Mr. Pardesi's accommodation requests.

10.	Defendant Elliot Galpern holds himself out as a representative and agent of Defendants Cambridge Realty Management, LLC and R.C.F.H.P. INC. In his conversations with

Mr. Pardesi, Elliot Galpern has expressed that he has decision-making authority with respect to Mr. Pardesi's accommodation requests.

## JURISDICTION AND VENUE

11. This Court has original, federal question jurisdiction over the subject matter of Mr. Pardesi's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over Mr. Pardesi's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims arise out of a common nucleus of operative facts.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because it lies in the judicial district where the events or omissions giving rise to the claims occurred, and where Defendants maintain their principal place of business.

## FACTUAL BACKGROUND

### A. Mr. Pardesi Moves Into His Walk-Up Apartment

13. Mr. Pardesi moved into his apartment in or around 1982. The apartment is on the fifth floor of a walk-up building located at 1374 York Avenue.

14. 1374 York Avenue does not have an elevator. To get to his apartment, Mr. Pardesi must climb four flights of stairs.

15. At the time that Mr. Pardesi moved into the apartment, his disabilities either had not yet developed or had not progressed to a point where they were affecting his daily activities.

### B. Mr. Pardesi's Disabilities Progress Over Time

16. Over the years, as Mr. Pardesi aged, a number of his disabilities and disorders began causing him significant pain and affecting his day-to-day living, including getting up and down the stairs of his apartment building. As a result of his disabilities, today, Mr. Pardesi only leaves his apartment out of necessity and limits the number of times he leaves his home.

17. Starting around 2014, nearly thirty-five years after moving into his apartment, Mr. Pardesi's congenital ankle deformity and unrelated knee disorders began to deteriorate, making it extremely painful for Mr. Pardesi to go up and down stairs. He underwent his first total knee replacement surgery in 2014.

18. Mr. Pardesi's knee and foot pain continued to worsen and was further exacerbated by other medical conditions. He then had a second total knee replacement in 2019.

19. Mr. Pardesi suffers back pain due to scoliosis. His scoliosis requires a great deal of medical attention. He receives injections to his back and attends physical therapy to help manage his pain.

20. Mr. Pardesi also suffers from diabetic neuropathy which causes pain and limb dysfunction that negatively affects his mobility and his ability to climb up and down stairs.

21. Due to a progressive congenital foot deformity, Mr. Pardesi suffers from detached ligaments and broken bones in his foot. His foot is in imminent need of reconstructive surgery due to these ailments. Mr. Pardesi has been forced to delay this surgery until after the knee surgery he underwent in May 2025.

22. In addition, Mr. Pardesi is asthmatic. Asthma makes ascending and descending stairs an even greater physical strain for Mr. Pardesi. He is completely out of breath by the time he climbs the four flights of stairs to his apartment, in addition to the pain caused by permanent knee and ankle impairments.

23. On or around July 23, 2024, Mr. Pardesi was informed by his doctors that he would need to under undergo foot and ankle surgery and a separate revision of his knee replacement to prevent further declines in his mobility.

24. Following both surgeries, Mr. Pardesi needed to be non-weight bearing and needed to live somewhere that did not have stairs for at least three months. Even after his surgeries, Mr. Pardesi's doctors expected his mobility to be permanently impaired to the point that traversing four-flights of stairs on a regular basis would be physically impossible.

25. On May 22, 2025, Mr. Pardesi underwent the first surgery to revise his knee replacement. While Mr. Pardesi is recovering from this surgery, he has been unable to return to his home because it is on the fifth floor. Although Mr. Pardesi's doctors believe he will recover from the surgery, recovery does not mean he will be able to regularly descend and ascend multiple flights of stairs to and from his apartment without excruciating pain and risk to his personal safety, including from falling.

26. Absent the reasonable accommodation of a transfer to a first floor unit, Mr. Pardesi will have to spend months recovering in a nursing home, instead of his actual home, for the surgery he underwent in May 2025, in addition to his subsequent reconstructive foot ankle surgery, that can only be performed once he recovers from his knee surgery.

**C.   As Early as 2014, Mr. Pardesi Began Requesting a Reasonable Accommodation Which Defendants Rejected or Ignored**

27. Since as early as 2014, Defendants have been aware that Mr. Pardesi suffers from several disabilities that limit his daily activities. In 2014, Mr Pardesi notified Defendants and their representatives, including the building superintendent, Louis Galpern, Robert Galpern, and Elliot Galpern, that his mobility was declining and he had impending knee replacement surgery scheduled. Mr. Pardesi requested the reasonable accommodation of a transfer to the first-floor unit in his building or a unit in another building in Defendants' portfolio, that was either on the first floor or in an elevator building.

28.     Elliot Galpern represented himself as an agent or representative of Defendants in his communications and interactions with Mr. Pardesi. Elliot Galpern expressed to Mr. Pardesi that he had decision-making authority with regards to Mr. Pardesi's accommodation request. Around the time that Mr. Pardesi initially requested a transfer in 2014, Elliot Galpern said that transferring Mr. Pardesi to a ground floor unit was "off the table."

29.     Elliot and Louis Galpern informed Mr. Pardesi that they had spoken to the owner of a nearby building that had an elevator. They told Mr. Pardesi he could move to that building. Elliot and Louis Galpern stated that Mr. Pardesi would not be able to transfer his rent-stabilized status to the new building and that any move would be at Mr. Pardesi's own expense.

30.     Telling Mr. Pardesi to forfeit his rent-stabilization status in exchange for a ground floor unit or a unit in an elevator building is not a reasonable accommodation. Mr. Pardesi rightfully declined this offer.

31.     Around the time of this request in 2014, Mr. Pardesi also complained to Defendants and the City of New York regarding unsafe conditions in his unit and building. Upon information and belief, Defendants retaliated against Mr. Pardesi for raising these complaints by continuing to reject his reasonable accommodation requests.

32.     Mr. Pardesi continued to live in his apartment and suffer the pain and exhaustion of his five-story walk-up because he had no alternatives.

33.     In 2019, Mr. Pardesi was scheduled to have another knee replacement. As part of his recovery protocol, Mr. Pardesi was severely limited in his ability to walk for months. He informed Defendants, and the building superintendent, of his mobility restriction post-surgery and reiterated that his disability had progressed to the point where he was unable to regularly traverse the stairs to his apartment without intense pain, fatigue, and discomfort. Mr. Pardesi repeated his

7

request that he be transferred to a ground floor unit in his building, or the two buildings adjacent to 1374 York Avenue, owned by Defendants or their affiliates. Defendants, the building superintendent, and other representatives of Defendants again rejected Mr. Pardesi's request for a reasonable accommodation.

34.     Throughout 2019, Mr. Pardesi repeated his request, on multiple separate occasions, for an apartment transfer as a reasonable accommodation for his disability. On each occasion, Defendants, the building superintendent, and other representatives of the Defendants, rejected Mr. Pardesi's reasonable accommodation request and provided no viable alternatives.

35.     In 2022, Mr. Pardesi again reiterated his request to Defendants, the building superintendent, and other representatives of Defendants that as a reasonable accommodation for his disabilities, Mr. Pardesi needed to be transferred to a ground floor unit in his building or the two buildings adjacent to 1374 York Avenue, owned by Defendants or their affiliates. Mr. Pardesi followed up on his request via email and over the phone. Defendants and their agents continued to ignore Mr. Pardesi's request.

36.     In April and May 2023, Mr. Pardesi again sent an email to Defendants and their representatives, specifically requesting a reasonable accommodation related to his mobility disability. In that email, he provided substantial documentation from multiple medical professionals documenting the existence of his disability and need for a reasonable accommodation.

37.     The medical documentation Mr. Pardesi provided Defendants and their representatives clearly described Mr. Pardesi's disabilities that result from his medical conditions. Mr Pardesi's medical providers recommended he avoid significant activity such as going up and down stairs, like those at his place of residence.

38. Despite this good-faith request and Mr. Pardesi providing his confidential medical information to establish his disabilities, Defendants and their representatives continued to ignore and/or reject Mr. Pardesi's request.

39. Over the past ten years, Mr. Pardesi has faced numerous difficulties resulting from needing to descend and ascend four flights of stairs to reach his apartment while suffering from a disability.

40. As a result of Defendants' failure to accommodate Mr. Pardesi, he frequently is unable to go grocery shopping, attend to errands outside the home, such as going to the pharmacy, the bank, or have dinner at a restaurant or pick-up takeout.

41. Mr. Pardesi's quality of life and community engagement has also been diminished because of Defendants' failure to accommodate him. Mr. Pardesi must limit or skip events and times of worship with his Sikh congregation because he is unable to traverse the stairs in his apartment building. He has had to cancel or re-schedule medical appointments because it is too difficult or exhausting to get to them because of the stairs in his apartment building. Further, Mr. Pardesi is limited in his ability to visit friends and be more involved in his community through volunteering and pursuing various learning opportunities and courses because of the pain and exhaustion he experiences every time he comes and goes from his apartment.

42. Mr. Pardesi's numerous physical ailments and Defendants' failure to accommodate his disability has taken a toll on his physical health and emotional well-being. Mr. Pardesi has become a prisoner in his own home, and is unable to enjoy basic life experiences like shopping, seeing friends, or worshipping with his religious community.

43. Mr. Pardesi's hardship is a direct result of Defendants' illegal practices of denying him a reasonable accommodation.

### D. Defendants Continue to Reject Mr. Pardesi's Requests and He Engages Counsel to Begin the Statutory Interactive Process

44. Mr. Pardesi's continued good-faith effort to obtain a reasonable accommodation from his landlord led him to contact Legal Services New York City ("LSNYC"). LSNYC accepted Mr. Pardesi's case to obtain a reasonable accommodation through the interactive process with his landlord or if necessary, through litigation. Shortly thereafter, Mr. Pardesi engaged Gibson, Dunn & Crutcher LLP ("Gibson Dunn") as his pro bono counsel to work alongside attorneys from LSNYC.

45. Given Defendants' and their representatives' refusal to respond to Mr. Pardesi's request for a reasonable accommodation, Gibson Dunn sent a demand letter on or around June 12, 2024 seeking a reasonable accommodation and beginning the interactive process. The letter was sent to the offices of the owner and managing agent of Mr. Pardesi's building listed in the Property Owner Registration Information section for 1374 York Avenue on the New York City Housing Preservation and Development website.

46. The reasonable deadline to respond set forth in the letter came and went with no response from Defendants or their representatives.

47. In a final attempt to engage with Defendants or their representatives prior to bringing litigation, Gibson Dunn contacted Defendant Louis Galpern directly by telephone. In the telephone conversation between Gibson Dunn and Louis Galpern, Louis Galpern refused to engage in the interactive process related to Mr. Pardesi's disability, reiterated that Mr. Pardesi did not "truly" have a disability, and stated that he would only communicate with Mr. Pardesi's "case manager."

48. Louis Galpern then told Gibson Dunn that Mr. Pardesi should seek assistance from the City of New York to move to supportive housing. Louis Galpern stated that he had told other tenants who requested accommodations to do the same things, implying that he had a habit of rejecting prior requests for reasonable accommodations.

49. Based upon information and belief and Louis Galpern's statements, Defendants have a pattern and practice of failing to reasonably accommodate disabled tenants and refer them to New York City housing agencies instead of providing legally required reasonable accommodations in compliance with federal, state, and local disability discrimination laws.

### E. Defendants Continue In Their Refusal to Offer Any Reasonable Accommodation

50. In the first meeting between counsel for Mr. Pardesi and Defendants, Mr. Pardesi's counsel explained that Mr. Pardesi has a qualifying disability and requires reasonable accommodations. Given his disability, Mr. Pardesi's attorneys explained that the only suitable accommodation would be a transfer to a ground floor unit in his building or one of the nearby buildings owned by Defendants or its affiliates.

51. Defendants' counsel contested Mr. Pardesi's disability status and contended that all ground floor units were occupied; therefore, Defendants represented that they could not possibly accommodate Mr. Pardesi.

52. Counsel for Mr. Pardesi requested that Defendants provide information sufficient to identify the nearby ground floor units as well as their current rent and lease renewal schedules. The lease information was necessary to understand Defendants' ability to transfer Mr. Pardesi. Despite agreeing on July 24, 2024 to produce this documentation, Defendants did not send any lease or unit information to Mr. Pardesi's counsel until September 9, 2024. Their refusal to provide this simple and readily accessible information unnecessarily delayed the interactive process.

11

53. On September 6, 2024, Defendants' counsel provided Mr. Pardesi's counsel with the list of nearby ground floor units but refused to confirm the rent stabilization status of any unit. Defendant's counsel continued to insist that because the units were currently occupied, they could not accommodate Mr. Pardesi.

54. Mr. Pardesi's counsel identified that a reasonable accommodation would be for Defendants to transfer Mr. Pardesi to a ground floor unit in his building, or one of the two adjacent buildings owned by Defendants or its affiliates, under the same terms and lease as his current rent stabilized unit. This transfer is the standard reasonable accommodation in these circumstances.

55. Instead of engaging in good faith dialogue related to this request, Defendants asserted that they would not offer a transfer to Mr. Pardesi even if a vacancy arose on the first floor.

### F. Instead of Offering to Negotiate a Reasonable Accommodation, Defendants Propose a Dangerous and Infeasible Modification

56. After refusing to accommodate Mr. Pardesi through an apartment transfer, on August 13, 2024, Defendants proposed an unrealistic and unsafe modification, suggesting Defendants would install a four-story chair lift in Mr. Pardesi's building. Chair lifts are only designed for short sets of stairs, often less than one flight, and most New York City buildings, including 1374 York Avenue, were not designed in such a way to accommodate a chair lift while maintaining compliance with the relevant building and fire codes. This suggestion was plainly unworkable and unserious, especially given that the stairway in Mr. Pardesi's building is only 33 inches wide. And even if such a chair lift complied with applicable building regulations, which it could not, these chair lifts are not designed for use to ascend and descend four flights of stairs.

57. In good faith, Mr. Pardesi's counsel agreed to take the offer to Mr. Pardesi, who raised safety concerns about being lifted four stories and the feasibility of installing such a chair

lift in the 33-inch stairwell. Mr. Pardesi's counsel later explained to Defendants why the chair lift was not a reasonable modification and even discussed that for similar cases prior to this, engineering reports were generated showing that a chair lift would not comply with applicable building and fire codes in an apartment building similar to Mr. Pardesi's.

58. Defendants continued to insist that the chair lift would "solve Mr. Pardesi's problems," despite Mr. Pardesi's counsel's detailed explanation of why that was not the case. All the while, Defendants never even addressed how the chair lift would fit in a 33-inch wide stairwell.

59. Mr. Pardesi's counsel offered to meet with Defendants via a Zoom videoconference on August 30, 2024 to further discuss the accommodation. Defendants confirmed that they would attend the meeting on August 22. Defendants failed to attend. Following this failure to attend the scheduled meeting, Mr. Pardesi's counsel reiterated that the only reasonable accommodation in this circumstance would be to transfer Mr. Pardesi to a ground floor unit, with his rent stabilized lease. Counsel proposed that this transfer could be implemented by transferring Mr. Pardesi upon the vacancy of any ground floor unit, at the expiration of a current tenant's lease if not renewed, or through a buy out of the current tenant. Mr. Pardesi's counsel requested that Mr. Pardesi's rent-stabilized status apply to the new unit for as long as he lives there, as is common practice in these cases. In response, Defendants insisted that they had no obligation to provide the only reasonable accommodation under the circumstances, a transfer to a ground floor unit as soon as it becomes available.

60. Defendants' obligation to provide a reasonable accommodation can require the landlord to waive policies or implement changes it otherwise would not, such as a buy-out of a ground floor tenant or another negotiated resolution whereby a ground floor unit is vacated.

61.     On information and belief, there is significant turnover of tenants in the ground floor units of Mr. Pardesi's building and the two adjacent buildings owned by Defendants or its affiliates. Such turnover provides the opportunity to transfer Mr. Pardesi to one of the ground floor units instead of immediately renting the unit to a new tenant. But even when Mr. Pardesi's counsel informed Defendants of this opportunity to transfer and thus reasonably accommodate Mr. Pardesi, Defendants refused to even notify Mr. Pardesi or his counsel of a vacancy, let alone arrange a transfer.

### G.     Defendants Pivot and Deny That Mr. Pardesi Has a Disability Despite Ample Documentation to the Contrary

62.     On September 16, 2024, Defendants shifted tactics and began to insist that they were not required to accommodate Mr. Pardesi because he does not have a disability. Mr. Pardesi's counsel explained in detail how Defendants have been on notice of Mr. Pardesi's disability since at least 2014 and that a refusal to accommodate based on denying that Mr. Pardesi has a disability is bad faith. Mr. Pardesi's counsel provided Defendants with doctor's notes and medical records confirming Mr. Pardesi's disability.

### H.     Mr. Pardesi and His Counsel Terminate the Interactive Process Because Defendants Refused to Engage in Good Faith or Offer Alternative Reasonable Accommodations

63.     Following months of engagement, and despite Defendants' lack of cooperation, Mr. Pardesi's counsel sent a letter to Defendants' counsel, on or around December 10, 2024, summarizing the parties' conversations. The letter explained Mr. Pardesi has a disability under applicable law and Defendants have refused to provide the one and only reasonable accommodation—*i.e.*, a transfer to a ground floor unit.

64.     On January 10, 2025, Defendants responded by letter, reiterating their refusal to accommodate Mr. Pardesi. Defendants again insisted Mr. Pardesi did not have a disability, and

14

that they had no legal requirement to accommodate him. They also reiterated that they would not modify any of their policies or practices to facilitate a transfer of Mr. Pardesi to a ground floor unit.

65. To date, Defendants have failed to transfer Mr. Pardesi to a ground floor unit in his building or another nearby building in Defendants or their affiliates' portfolio.

## CAUSES OF ACTION

### COUNT I
**Failure to Provide Reasonable Accommodation in Violation of the Fair Housing Amendments Act, 42 U.S.C. § 3601, et seq.**

66. Mr. Pardesi realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 66 as if fully set forth herein.

67. Section 3604 of the Fair Housing Amendments Act prohibits discrimination against any person with a disability or handicap "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(2).

68. Disability-based discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(3)(b).

69. Mr. Pardesi is a "person" with a "handicap" or disability within the meaning of 42 U.S.C. § 3602.

70. Defendants and their employees and representatives knew or should have known that Mr. Pardesi was handicapped or disabled.

15

71. Mr. Pardesi's disability requires that Defendants provide a reasonable accommodation in order to afford Mr. Pardesi an equal opportunity to use and enjoy his apartment and the apartment building.

72. Defendants have refused and continue to refuse to make a reasonable accommodation for Mr. Pardesi's disability.

## COUNT II
### Failure to Provide Reasonable Accommodation in Violation of the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq.

73. Mr. Pardesi realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 73 as if fully set forth herein.

74. The New York State Human Rights Law provides that it is "an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, managing agent of, or other person having the right of ownership of or possession of or the right to rent or lease housing accommodations . . . [t]o refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling." N.Y. Exec. Law § 296(18)(2).

75. Mr. Pardesi is a qualified individual with a disability within the meaning of N.Y. Exec. Law § 292.

76. Mr. Pardesi's disability requires that Defendants provide a reasonable accommodation to afford Mr. Pardesi an equal opportunity to use and enjoy his apartment and the apartment building.

77. Defendants have refused and continue to refuse to make a reasonable accommodation for Mr. Pardesi's disability.

## COUNT III
### Failure to Provide Reasonable Accommodation in Violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107

78. Mr. Pardesi realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

79. The New York City Human Rights Law provides that "[i]t shall be an unlawful discriminatory practice for the owner…or managing agent…[t]o refuse to…rent, lease, approve the…rental or lease or otherwise deny to or withhold from any person…such a housing accommodation or an interest therein because of the actual or perceived…disability." N.Y.C. Admin. Code § 8-107(5)(a).

80. The New York City Human Rights Law further requires that "any person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to…enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(5)(a)

81. Mr. Pardesi is a qualified individual with a disability within the meaning of N.Y.C Admin. Code § 8-107.

82. Mr. Pardesi's disability requires that Defendants provide a reasonable accommodation to afford Mr. Pardesi an equal opportunity to use and enjoy his apartment and the apartment building.

83. Defendants have refused and continue to refuse to make a reasonable accommodation for Mr. Pardesi's disability.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Pardesi respectfully requests that this Court enter judgment against Defendants as follows:

a. Declare that Defendants violated Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq., and its implementing regulations;

b. Declare that Defendants violated New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and its implementing regulations;

c. Declare that Defendants violated New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., and its implementing regulations;

d. Grant injunctive relief requiring Defendants to immediately provide a reasonable accommodation to Mr. Pardesi by transferring him to a ground floor unit in his building or a nearby building owned or operated by Defendants or their affiliates;

e. Enter final judgment awarding Mr. Pardesi actual, compensatory, and punitive damages for injuries and expenses incurred as a result of the violations set forth above in an amount to be determined at trial;

f. Award reasonable attorney's fees, costs, and disbursements; and

g. Grant such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: New York, New York  
        August 11, 2025

GIBSON, DUNN & CRUTCHER LLP

<u>*/s/ Christopher D. Belelieu*</u>  
Christopher D. Belelieu  
Alon H. Sugarman  
200 Park Avenue  
New York, NY 10166-0193  
(212) 351-4000  
cbelelieu@gibsondunn.com  
asugarman@gibsondunn.com

Sarah Smith  
LEGAL SERVICES NYC  
105 Court Street, 4th Floor  
Brooklyn, NY 11201  
(718) 233-1379  
sesmith@lsnyc.org

*Attorneys for Plaintiff Gurdial Pardesi*